[Civ. No. 3639. Fifth Dist. Nov. 18, 1977.]

JAMES PATRICK CURRY, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Melvin W. Nitz, Public Defender, under appointment by the Court of Appeal, and Roger K. Litman, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Eddie T. Keller, Charles P. Just and Nelson P. Kempsky, Deputy Attorneys General, William A. Smith, District Attorney, and Jerome M. Behrens, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**HOPPER, J.**—In this case we consider (1) the effect on the 10-day statutory limit of Penal Code section 859b[1] as to the commencement of a preliminary examination of a motion by a defendant to represent himself and (2) the nature of competency necessary to waive counsel.

The facts are:

Prior to the filing of the petition now before this court, petitioner James Curry had participated in two preliminary hearings, both arising from the same set of facts. Petitioner was permitted to represent himself in the first preliminary hearing after asserting his right to represent himself and making a knowing and intelligent waiver of his right to counsel under *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]. That hearing was later set aside by the superior court on the ground that petitioner had not been capable of making the necessary waiver of counsel. Thus, the process was started again with the filing of a new complaint on June 7.

Petitioner was again permitted to represent himself, and the second preliminary hearing was set for June 20, nine days after the arraignment on the refiled complaint. Four days later (June 13), the public defender requested to be relieved as advisory counsel. At the end of the hearing on that motion (which took place on June 16), the judge ordered petitioner

---

[1]The pertinent part of Penal Code section 859b is: "Unless the defendant waives the right, the defendant if he is in custody shall have the right to preliminary examination within 10 court days of the date he is arraigned or pleads, whichever occurs later."

to be examined by the Fresno County Mental Health Department pursuant to Penal Code section 4011.6, and indicated that the earliest date for the preliminary hearing was June 27, 1977. Petitioner immediately objected to this continuance and moved for dismissal. The motion was denied.

On June 21, 1977, petitioner was again before the municipal judge because he had not yet been examined by the mental health department. The judge reordered the examination and directed the mental health department to prepare a report no later than June 27. The report was not filed by June 27, but the public defender was nevertheless relieved of his duty as advisory counsel on that date. Furthermore, petitioner was permitted to represent himself.

The district attorney, evidently dissatisfied with the fact that petitioner had been granted permission to represent himself, moved that the court reexamine petitioner's mental competence pursuant to Penal Code section 1368, subdivision (a). At the conclusion of the proceedings, the judge ruled that petitioner could no longer act as his own attorney, stating:

"The Court now is—has the benefit of the preliminary examination, but more importantly, the decision of [the judge] and the argument and pleadings filed by the Public Defender in the Superior Court case heard before [the judge] in which the Public Defender in their 995 motion, which I understand was opposed by Mr. Curry and was granted by [the judge], argued that in fact Mr. Curry was incompetent to proceed at the preliminary examination, did not have benefit of counsel, and therefore the matter should be dismissed, and the record reflects that [the judge] took that action and did dismiss the prior proceeding and allowed the motion for amended complaint to be filed, which is before the Court now in Case No. 28160.

"At the time I heard your request to go in pro per, Mr. Curry, the Court did not have benefit of the preliminary examination transcript, the Court did not have copies of the pleadings filed by the Public Defender on your behalf in the 995 motion. The Court had not seen your behavior except at the one appearance where I asked you a series of questions trying to determine whether or not you were competent to represent yourself, and at that time it was my conclusion that you were able to adequately represent yourself and I granted your motion in pro per.

"Since that time I am forced to a different conclusion. In light of the papers before me, in light of what I have seen you do in this courtroom in admitting certain evidence, in not making timely objections, in arguing with the Court, and some of the various testimony that has come before the Court, I am going to revise my order previously made. I am going to rule that you are not able to represent yourself in pro per. I am going to rescind that order and direct the Public Defender to represent you at the preliminary examination that is scheduled for Tuesday, July 5th, and I hereby appoint the Public Defender for that purpose. And I make no finding as to the motion under 1368 before me. I am leaving that to the wise wisdom of the Superior Court."

The preliminary hearing occurred on July 5 and 6 and petitioner was represented by the public defender. The information was filed, but the first three counts were struck upon petitioner's 995 motion.

Petitioner seeks a writ of prohibition or mandate to prevent further prosecution of the information, contending that he was wrongfully denied his right to represent himself and that the preliminary examination was not held within the 10 days as required by Penal Code section 859b.

■ We hold that the time necessarily required in determining the mental capacity of a defendant to waive counsel is to be excluded in computing the 10-court-day limit of Penal Code section 859b.

While the 10-day limit absent waiver is absolute, whenever a defendant moves to represent himself, the defendant by his own action brings into play the operation of *Faretta* v. *California, supra,* 422 U.S. 806 [45 L.Ed. 562, 95 S.Ct. 2525]. That motion necessitates a determination by the judge as to whether the self-representation election is being made voluntarily and intelligently. A perfunctory hearing is improper. The record must show that the defendant made a knowing and intelligent election. (*Faretta* v. *California, supra,* 422 U.S. 806, 835 [45 L.Ed.2d 562, 581]; see *People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36]; *People* v. *Elliott* (1977) 70 Cal.App.3d 984 [139 Cal.Rptr. 205]; and *People* v. *Harris* (1977) 65 Cal.App.3d 978 [135 Cal.Rptr. 668].)

The time necessarily required in a *Faretta* hearing will depend upon the totality of the circumstances in the individual case. In some situations the hearing may be relatively short and will result in little, if any, extension of the 10-day period. In other situations there may be a longer

extension required by reason of a psychiatric examination which is dependent on the availability of examiners. We do not suggest that the preliminary examination must await a written report when an oral report or summary may suffice. Nor do we condone an unreasonable delay in holding a *Faretta* hearing and ruling on the waiver. The amount of the extension in a particular case is a matter within the sound discretion of the judge.

Without the rule which we announce herein tolling the 10-day period, the results are potentially ludicrous. As an extreme example, a defendant in custody could wait until the tenth day to make a motion for self-representation, leaving the court without adequate time to conduct a hearing and make a ruling on the *Faretta* motion. To hold that Penal Code section 859b requires discharge of the defendant in such a case would be disastrous in an already overloaded criminal justice system. Penal Code section 859b must therefore be subordinated to the constitutional right of self-representation. The facts in this case indicate that the motion was made early in the proceedings. However, considering all of the factors involved, we cannot say that the court abused its discretion when it referred the petitioner to a psychiatric examination. The preliminary examination was timely held.

If the section 859b issue were the only one before us, we would deny the writit. ▮▮▮ However, we must also consider the issue of the nature of competency to represent oneself.

Under *Faretta*, the state may not constitutionally prevent a defendant charged with a commission of a criminal offense from controlling his own fate by forcing on him counsel who may present a case which is not consistent with the actual wishes of the defendant (*People* v. *Windham* (1977) 19 Cal.3d 121, 130 [137 Cal.Rptr. 8, 560 P.2d 1187]). While some guidelines are available (see, e.g., Los Angeles Sup. Ct., Criminal Trial Judge's Benchbook, pp. 85-92.2), the actual conducting of a *Faretta* hearing may be difficult, time-consuming and trying of the patience of the trial judge, particularly if the defendant is eccentric, or prone to causing exasperation in others, or engages in the "playing of games,"·or "harassing the establishment." However, the judge should not be misled by a confusion of the issue to be determined in a *Faretta* hearing.

We hold that the sole issue to be determined in a *Faretta* hearing is whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and

consequences of his action. Whether or not a defendant is competent to act as his own lawyer is irrelevant. The fact that the defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law' [citation]" (*Faretta, supra,* 422 U.S. 806, 834 [45 L.Ed.2d 562, 581]). ██ Whenever a psychiatric evaluation is sought to assist the hearing judge, the evaluation should be limited to competency to make the required waiver. The standard is *not* similar to that of Penal Code section 1368. ██ The United States Supreme Court decision of *Westbrook* v. *Arizona* (1966) 384 U.S. 150 [16 L.Ed.2d 429, 86 S.Ct. 1320] implies that a distinction exists between competency to stand trial and competency to make a knowing and intelligent waiver of the right to counsel. Commentators have interpreted *Westbrook* to mean that while a defendant may be competent to stand trial, he may not be competent to waive counsel (Silten & Tullis, *Mental Competency in Criminal Proceedings* (1977) 28 Hastings L.J. 1053, 1066). From this they derive the formula that "a defendant must be free of mental disorder which would so impair his free will that his decision to waive counsel would not be voluntary" (*id.* at p. 1067). Thus, a *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357] standard of an "intentional relinquishment or abandonment of a known right or privilege" is met if the trial court makes the factual determination that the defendant is free of such a mental disorder and indicates, on the record, that he is aware of the consequences of his request.

In this case the judge ruled that the petitioner was not permitted to represent himself. In the absence of an abuse of discretion, the decision of the judge should not be disturbed by this court. (*People* v. *Elliot* (1977) 70 Cal.App.3d 984, 990 [139 Cal.Rptr. 205]; *People* v. *Carter* (1967) 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].)

The Attorney General points to various incidents in which the petitioner acted erratically or eccentrically to support the contention that the trial judge had ample facts to find that petitioner was incompetent to waive counsel.[2] However, mere eccentric behavior is not sufficient to

---

[2]The Attorney General refers to the following as indicative of petitioner's incompetence: (1) Petitioner's own testimony at the earlier preliminary examination, quoted by his counsel, that he had lost contact with reality the previous summer; (2) the testimony of Sergeant Durham concerning petitioner's threats to kill him uttered when petitioner was removed from the law library; (3) the testimony of mental health rehabilitation worker, Jan, that petitioner ranted and yelled at her for 20 minutes and then refused to talk with her; (4) a drawing of a nude woman sketched by petitioner in his jail cell with the name "Jan" on it, with the following written on the bottom: "Mirror, mirror on the wall, who is fairest of them all. James Patric Curry"; (5) a letter sent by petitioner to Jan

indicate that a defendant is incompetent to waive counsel. The important considerations are that the court establish that the defendant is literate and understanding and that he has voluntarily (meaning free of mental disorder) exercised the choice of representing himself (*People* v. *Elliot supra*, 70 Cal.App.3d 984, 991 [139 Cal.Rptr. 205]). The record clearly demonstrates that petitioner is literate. While his method of citing cases and law is not correct, it does demonstrate a capacity to read and understand the English language. Furthermore, petitioner has not demonstrated any confusion or misunderstanding of the potential for damage that he can do to himself: he has stated in a very coherent fashion that he would rather spend 20 years in prison because of his own mistakes than 8 months in jail because of the ineptitude of his lawyer. Petitioner clearly stated his awareness of what he was doing.

Here the superior court judge testified at the hearing on the public defender's motion to be relieved that the defendant was "aware of the nature of the proceedings and the charges against him" but felt that he was "mentally unable to represent himself." That judge relied on five factors which he indicated influenced him in his decision: (1) a review of the preliminary transcript showing that the defendant "got into some deep trouble representing himself" by admissions of crimes and rambling statements indicating "mental aberration," (2) petitioner's appearances in court before the judge, (3) an affidavit by the public defender that the county medical director was of the opinion that petitioner was suffering from "mental illness," (4) conversations with psychiatric social workers who had talked to the petitioner, and (5) petitioner's conduct in court causing the judge to feel "there would be a disturbance of the normal procedure of the court during a trial."

Conceivably some of the factors listed might go to the defendant's capacity to waive, but the details are not given, perhaps due to a

---

about the picture in the cell, telling her that the face of the drawing was her and that he thought it was flattering; (6) testimony of Jan's final interview with petitioner, in which he was so sexually obsessed with her that the interview was unavailing; (7) petitioner's behavior in telling other mental health patients to stop taking their medications because the medications were harmful to their bodies and that they were trying to destroy their minds; (8) petitioner's own testimony that he had hollered and cursed in the jail for two hours and said he would keep it up until the jailers brought him a pencil, paper and a cup of coffee; and (9) petitioner's own behavior in court during the hearing, in which he constantly rambled and showed complete inability to stay with a point or follow direct instructions of the court.

This type of conduct demonstrates that petitioner is very eccentric and may have some emotional and mental imbalance, but none of these incidents show that petitioner was incompetent to waive counsel; e.g., that he was illiterate or incapable of understanding the full consequences of the waiver.

misunderstanding of the proper standard to be used. ■ We reiterate that whenever a psychiatric evaluation is sought to assist the judge at the hearing, the evaluation should be limited to competency to make the required waiver and not to other competency aspects.

■ We conclude that the judge, perhaps influenced by a commendable concern for the best interests of the petitioner, has been misled into applying a different standard than is required in these circumstances. Since it appears that the proper standard was not used, we do not reach the question of whether the evidence which was before the magistrate meets the required standard.

While petitioner may be foolhardy in representing himself, under the compulsion of *Faretta* he must be allowed to proceed after a proper caution by the court (see *People* v. *Lopez, supra,* 71 Cal.App.3d 568, 573 [138 Cal.Rptr. 36]). Naturally, the petitioner will not be afforded any extraordinary privileges, nor will he be permitted to indulge in improper courtroom behavior. It will be up to the judge to take firm control of the situation, and it is within his sound discretion to revoke petitioner's *Faretta* rights if petitioner cannot maintain the dignity of the court.

■ We reject the contention by the Attorney General that the preliminary examination is not a "critical stage" of the proceedings. Reliance on *In re Vizzard* (1967) 255 Cal.App.2d 571 [63 Cal.Rptr. 305] is misplaced in the light of *Coleman* v. *Alabama* (1970) 399 U.S. 1 [26 L.Ed.2d 387, 90 S.Ct. 1999]. (See also *Hale* v. *Superior Court* (1975) 15 Cal.3d 221, 228 [124 Cal.Rptr. 57, 539 P.2d 817].) Petitioner had a right to represent himself at the preliminary examination.[3] The right to represent oneself stands in equal dignity to the right to counsel. Therefore, petitioner was illegally committed.[4] No prejudice need be shown by a petitioner who, from the very beginning, has repeatedly asserted that he elected to represent himself. The petitioner was not lawfully committed.

---

[3] Regrettably the original holding to answer of the petitioner when he was representing himself might have been legally sufficient. The People now must determine the advisability of refiling charges. If charges are refiled, this opinion does not preclude a subsequent hearing before the judge on petitioner's mental capacity applying the proper standard.

[4] In *People* v. *Johnson* (1970) 13 Cal.App.3d 1 [91 Cal.Rptr. 203], the court did not consider the correct issue, i.e., whether or not the defendant was legally committed by the magistrate. Therefore, we decline to follow that opinion.

Let a writ of mandate issue directing the superior court to vacate the order denying the motion to set aside the information and enter a new and different order granting the motion.

The petition for writ of prohibition is denied.

The stay order heretofore issued by this court shall remain in force until this decision is final in all courts or the Supreme Court grants a hearing herein, whichever may first occur.

Brown (G. A.), P. J., and Franson, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied February 16, 1978. Clark, J., and Manuel, J., were of the opinion that the petition should be granted.