[Crim. No. 23243. First Dist., Div. Two. Dec. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN M. WOLOZON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Peter R. Silten, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, W. Eric Collins and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MILLER, J.—Having been found not guilty by reason of insanity of forced oral copulation and assault with intent to commit murder in May 1976, Steven Wolozon was committed to Atascadero State Hospital under section 1026 of the Penal Code.[1] On March 9, 1981, the Alameda County District Attorney filed a petition pursuant to section 1026.5 to extend Wolozon's commitment beyond the maximum prescribed term. After an order denying Wolozon's motion to represent himself, a jury found that Wolozon had a mental disease, defect or disorder and by reason of such mental condition represents a substantial danger of physical harm to others. Wolozon appeals from this judgment.

Because we find that the trial court improperly denied appellant the right to represent himself and the denial of his motion mandates reversal of the judgment we need only discuss the pertinent facts on this issue.

On July 16, 1981, prior to the commencement of trial appellant informed the court that he wished to exercise his right to represent himself. The court queried appellant as to the reason for making such a request and appellant made the following statement:

"Well, I feel that in a case like this that involves such a lengthy history and such a huge body of facts, that I am the individual that has greatest access to those facts, greatest knowledge of those facts. And I have many facts at my disposal that it would just take extremely long periods of time to communicate to another party. Also, I have been engaged in proceedings relevant to issues as insanity or mental health for quite a long period of time, which has familiarized

---

[1] All code sections will refer to the Penal Code unless otherwise indicated.

me with many aspects of these cases. I just have the feeling that it would be in my best interest, Your Honor, to act as my own counsel in this case." Appellant then informed the court that he was prepared to go to trial that day. In order to consider the legal ramifications, the court put the matter over until the next morning.

The following day the court questioned appellant in accordance with the *Faretta*[2] "bar test" and the *Lopez*[3] intellectual capacity test in order to reach its determination of whether appellant made a knowing and intelligent election to represent himself. In response to the court's inquiry appellant stated inter alia that he had previously represented himself in a nonjury trial in Ohio on a contempt charge; that he understood the present proceeding, pursuant to section 1026.5, allowed for a two-year extension of his 1026 commitment in the finding by a unanimous jury that he represented a danger of physical harm to himself or others; that he knew he would receive no special indulgence by the court and that he would be bound by all the technical rules of substantive law, criminal procedure and evidence; and that he understood that he would be at an extreme disadvantage as to legal expertise regarding many issues that would be raised during the trial.

Appellant told the court he had completed his high school education at Atascadero, had done other study on his own, and had acted "somewhat" as "legal advisor" for other patients at Atascadero. Appellant stated that he reads, writes, and has a clear understanding of English and that he had decided to act as his own counsel even though he knew he was entitled to another court-appointed counsel. Appellant indicated he understood that should he be allowed to represent himself he would be bound by a favorable or unfavorable judgment.

The motion was then argued by counsel. The prosecutor requested that the court consider the medical reports submitted by Drs. Johnson, Schulte, Ponomareff and Gudiksen in deciding the motion. Defense counsel objected to the court considering the reports on the grounds that the reports were not directed to the question of whether appellant could make an intelligent and knowing waiver of his right to be represented by an attorney but rather addressed the issue of whether appellant represents a substantial danger to himself or others. Defense counsel also objected to the court's consideration of the reports, without further psychiatric testimony in person in which appellant could cross-examine the psychiatrists with respect to the issue of his giving a knowing and intelligent waiver.

---

[2]*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].
[3]*People* v. *Lopez* (1977) 71 Cal.App.3d 568 [138 Cal.Rptr. 36].

In support of appellant's motion to represent himself, defense counsel stated[4] that on the basis of all her conversations with appellant she found that he had a very clear understanding of different approaches that might be taken with regard to the issues and expert witnesses. She continued that although he did not fully understand the rules of evidence, which was not at issue, he fully understood the situation he was in. Counsel reiterated that whether or not appellant is a danger to others had no relevance to whether or not he knew what he was doing in requesting to act as his own attorney.

The court concluded that although the reports were not totally relevant to the issue of waiver they contained information that the court could consider in exercising its discretion. Thereafter, the court stated that it was apparent that appellant was literate and he had passed the *Faretta* bar test. However, the court elected to exercise its discretion and denied the motion. The court indicated that it had relied on psychiatric evidence in making its determination but refused to specify any particular evidence on which it had relied.

■ A defendant in a criminal trial has a constitutional right of self-representation and he may defend himself without counsel when he voluntarily and intelligently elects to do so. (*Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) The defendant's "technical legal knowledge" is irrelevant to the court's assessment of the defendant's knowing exercise of the right to defend himself. (*Id.,* at p. 836 [45 L.Ed.2d at p. 582]; see also, *People* v. *Windham* (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187].)

In order to comply with the *Faretta* requirement that the defendant be made aware of the dangers and disadvantages of self-representation, it has been suggested that the defendant be advised that 1) self-representation is almost always unwise; 2) defendant will receive no special indulgence by the court and that he must follow all the technical rules of substantive law, criminal procedure and evidence; 3) the prosecution will be represented by an experienced attorney, thus placing defendant at an extreme disadvantage with respect to legal expertise; and 4) defendant will receive no more privileges than available to any other litigant appearing in propria persona and will receive no extra time for preparation. (*People* v. *Lopez* (1977) 71 Cal.App.3d 568, 572-573 [138 Cal.Rptr. 36].) *Lopez* also advises that the court should make inquiry into whether defendant's waiver constitutes an "intelligent decision." Such an inquiry should include the following: 1) Defendant's education and familiarity with legal procedures. 2) Whether defendant is aware of his right to counsel, including his right to court-appointed counsel. 3) Whether defendant understands the nature of the proceedings, the possible outcome, possible defenses and

---

[4]Statements of a responsible officer of the court are tantamount to sworn testimony. (*People* v. *Laudermilk* (1967) 67 Cal.2d 272, 286 [61 Cal.Rptr. 644, 431 P.2d 228].)

possible punishments. 4) Whether defendant is aware that misbehavior or trial disruption will result in the right of self-representation being vacated. Particularly pertinent to the instant action is the *Lopez* recommendation that "[i]f there is any question in the court's mind as to a defendant's mental capacity it would appear obvious that a rather careful inquiry into that subject should be made—probably by way of a psychiatric examination." (*Id.*, at p. 573.)

In *Westbrook* v. *Arizona* (1966) 384 U.S. 150 [16 L.Ed.2d 429, 86 S.Ct. 1320] the United States Supreme Court ruled that a defendant's hearing for trial competency was insufficient to determine competency to waive the right to counsel in order to proceed pro se. *Westbrook* has subsequently been interpreted as authority for the proposition that, unlike the standard used in determining mental competency for purposes of trial, the applicable standard governing the validity of a waiver of the right to counsel requires a finding that defendant is " 'free of mental disorder which would so impair his free will that his decision to waive counsel would not be voluntary' [Citation]." (*Curry* v. *Superior Court* (1977) 75 Cal.App.3d 221, 227 [141 Cal.Rptr. 884]; accord *People* v. *Zatko* (1978) 80 Cal.App.3d 534, 544-545 [145 Cal.Rptr. 643]; see also *People* v. *Teron* (1979) 23 Cal.3d 103, 113 [151 Cal.Rptr. 633, 588 P.2d 773].) Consequently, the *Curry* court held that whenever a psychiatric evaluation is sought to assist the hearing judge, the evaluation should be limited to competency to make the required waiver and not to other competency aspects. (75 Cal.App.3d at p. 229.)

█ In the present case, all four of the doctors were asked to examine appellant solely for the purpose of determining whether his commitment to Atascadero State Hospital should be extended by reason of present dangerousness, pursuant to provisions of section 1026.5.[5] None of the four doctors was asked to determine appellant's competency to waive counsel and none offered his or her opinion on the subject. Each merely recommended that appellant's present commitment at Atascadero be extended. Although the trial court indicated that it had relied on the psychiatric evidence, it failed to specify and we are unable to locate evidence in the reports that appellant has a mental disorder which would impair his ability to waive his right to counsel. If a hearing for trial competency purposes is insufficient to determine competency to waive the right to counsel, we can only conclude that reports directed to the issue of whether appellant constitutes a danger to others is equally insufficient.

---

[5]Dr. Johnson was asked to examine appellant for "evaluation for extension commitment." Dr. Schulte was asked to "assess present danger potential as a basis for consideration of extension of [appellant's] Section 1026 P.C. commitment." Drs. Gudiksen and Ponomareff were appointed by the trial court to determine appellant's "present condition re plea of not guilty by reason of insanity."

■ Citing section 1026.5, subdivision (b)(5) and *People* v. *Winson* (1981) 29 Cal.3d 711 [175 Cal.Rptr. 621, 631 P.2d 55], appellant also contends that the admission of the four doctors' reports into evidence denied appellant his constitutional right to cross-examine the witnesses against him. We address this issue since it is likely to arise in future proceedings.

Section 1026.5, subdivision (b)(5) provides in part that "[t]he person shall be entitled to the rights guaranteed under the Federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees. . . . Appointment of necessary psychologists or psychiatrists shall be made in accordance with this article and Penal Code and Evidence Code provisions applicable to criminal defendants who have entered pleas of not guilty by reason of insanity . . . ." Section 1027, subdivision (e)[6] which deals with expert evidence in pleas of insanity specifically states that appointed psychiatrists and psychologists may be called to testify and/or cross-examined by either party to an action.

In *In re Bye* (1974) 12 Cal.3d 96, 110 [115 Cal.Rptr. 382, 524 P.2d 854] our Supreme Court unanimously held that an individual committed to the California Rehabilitation Center is entitled to cross-examine witnesses, including CRC psychiatrists and psychologists, at a hearing to review the revocation of CRC outpatient status. In her dissent to the majority opinion in *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622], a case which denied the right of confrontation to CRC *inpatients,* the chief justice reiterated the constitutional principle that in almost every setting where important decisions turn on questions of fact, including psychiatric evaluations, due process *requires* an opportunity to confront and cross-examine adverse witnesses. (*Id.,* at pp. 280-281.)

In a 1026.5 proceeding a fundamental liberty interest is at stake. Accordingly, we hold that in a hearing to extend commitment under section 1026.5, the person committed to the state hospital has a right to confront and cross-examine psychiatrists and psychologists testifying against him. This ruling applies both to the case-in-chief and any pretrial hearing concerned with the person's knowing and intelligent waiver of his right to counsel.

---

[6]Section 1027, subdivision (e) provides: "Any psychiatrist or psychologist so appointed by the court may be called by either party to the action or by the court itself and when so called shall be subject to all legal objections as to competency and bias and as to qualifications as an expert. When called by the court, or by either party, to the action, the court may examine the psychiatrist, or psychologist as deemed necessary, but either party shall have the same right to object to the questions asked by the court and the evidence adduced as though the psychiatrist or psychologist were a witness for the adverse party. When the psychiatrist or psychologist is called and examined by the court the parties may cross-examine him in the order directed by the court. When called by either party to the action the adverse party may examine him the same as in the case of any other witness called by such party."

The judgment is reversed and the case remanded for proceedings not inconsistent with this opinion.

Grodin, P. J., and Smith, J., concurred.

On January 4, 1983, the opinion was modified to read as printed above.