[No. G010696. Fourth Dist., Div. Three. Apr. 23, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY NICK ANGELETAKIS, Defendant and Appellant.

COUNSEL

William J. Kopeny for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Frederick R. Millar, Jr., and Janelle B. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WALLIN, J.—Anthony Nick Angeletakis was found not guilty by reason of insanity of felonious assault with the use of a firearm and committed to Patton State Hospital in March 1981. In June 1990, during the hearing on the third extension of his commitment (Pen. Code, § 1026.5), Angeletakis

moved to institute proceedings to determine his present competence to stand trial (Pen. Code, § 1368). His motion was denied and his commitment was extended for an additional two years. He appeals from the judgment, contending that a person subject to a commitment extension hearing has the right, under due process principles and express statutory authority, to understand the nature of the proceedings against him and to assist his counsel in the conduct of his defense; accordingly, he claims the trial court erred in denying his motion to suspend the proceedings and demonstrate his incompetence. We disagree with Angeletakis, however, and find that proceedings to determine present sanity do not apply to a hearing to extend a commitment under Penal Code section 1026.5.[1]

In August 1989, the district attorney filed a petition to extend Angeletakis's commitment an additional two years (§ 1026.5); in June 1990, his counsel expressed doubts about Angeletakis's competence to stand trial and his ability to help present a defense to the petition, and moved to suspend the extension proceedings and institute proceedings to determine his present sanity under section 1368. Without hearing evidence of Angeletakis's incompetence, the trial court denied the motion on the grounds that section 1368 does not apply to section 1026.5 proceedings. Angeletakis's subsequent motion to reconsider was also denied.

In November 1990, Angeletakis moved to withdraw his original plea of not guilty by reason of insanity (NGI) on the grounds that he was not informed of the possible commitment extensions. At the inception of the hearing, Angeletakis's counsel, William Kopeny, informed the court that he was unable to present any evidence in support of the motion because Angeletakis was incapable of assisting him; Kopeny asked the court to suspend the proceedings under section 1368. ▪▪ The court refused, again finding that section 1368 did not apply to postjudgment proceedings.[2]

The petition to extend the commitment was tried by a jury in January 1991. Five expert witnesses, all mental health professionals, testified. They

[1]All statutory references are to the Penal Code.

[2]Angeletakis appealed his second commitment extension and at that time attempted to collaterally attack the underlying NGI plea. In an unpublished opinion (*People* v. *Angeletakis* (Mar. 28, 1990) G007338), this court affirmed the commitment extension and rejected the attack, holding any challenge to the NGI plea must be based on an evidentiary showing in the superior court of excuse for delay and violation of the terms of the plea agreement.

Counsel points out the NGI challenge was sent back for an evidentiary hearing but that he is unable to get the facts necessary to prevail from Angeletakis because of his mental incompetence, the result of which is a manifestly unfair hearing. While his argument is compelling, his collateral attack on the NGI plea is not subject to direct appeal from the ensuing judgment extending the commitment. (*In re Robinson* (1990) 216 Cal.App.3d 1510 [265 Cal.Rptr. 574].) In holding such an attack must be raised in the appellate court by a petition for writ of habeas corpus, the *Robinson* court explained that an appeal from a

unanimously characterized Angeletakis as delusional and dangerous; he was diagnosed as a chronic paranoid schizophrenic who could not always be controlled with medication, and his condition seemed to be deteriorating over time. The jury found Angeletakis represented a substantial danger of physical harm to others if placed in an unsupervised environment and extended his commitment an additional two years.

## I

■ As a matter of statutory construction, the proceedings to determine competence to stand trial do not apply to commitment extension hearings. The provisions relating to the determination of competence to stand trial "are expressly limited in their application to criminal proceedings which occur prior to judgment and sentence." (*Juarez* v. *Superior Court* (1987) 196 Cal.App.3d 928, 931 [242 Cal.Rptr. 192].) Section 1367 provides, "A person cannot be tried or adjudged to punishment while such person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." Section 1368 provides for the suspension of proceedings if, "during the pendency of an action and prior to judgment," the court or counsel suspects the defendant may be mentally incompetent. If the defendant is found to be so impaired, the proceedings are suspended until he becomes mentally competent. (§ 1370.) In the meantime, the defendant is committed to a mental health facility for treatment.

In contrast, a proceeding under section 1026.5, subdivision (b) " 'is essentially civil in nature, because it is directed to the treatment of a patient's illness, not punishment.' " (*Juarez* v. *Superior Court, supra,* 196 Cal.App.3d at p. 931, quoting *People* v. *Beard* (1985) 173 Cal.App.3d 1113, 1118-1119 [219 Cal.Rptr. 225].) After a determination that a defendant is not guilty by reason of insanity, he is committed to the Department of Mental Health for a period not to exceed the maximum prison sentence he could have received for the underlying offense. (§ 1026.5, subd. (a)(1).) If his sanity is restored in the interim, he may petition for release (§ 1026.2); at the expiration of the maximum period, however, he must be released unless the district attorney

commitment extension "could only be grounded on irregularities in the trial on the petition to extend his commitment. [The] motion to dismiss, insofar as it purported to attack collaterally [the] original plea, was not subject to direct appeal from the ensuing judgment and was not properly joined with that appeal." (*Id.* at p. 1516.) Thus, we do not consider whether a criminal committee has a due process right to be competent to stand trial at a hearing on a motion to withdraw an NGI plea. (But see *People* v. *Kelly* (1992) 1 Cal.4th 495 [3 Cal.Rptr.2d 677, 822 P.2d 385].)

petitions to extend the commitment for an additional two years on the ground that the committee poses a substantial risk of physical harm to others as a result of a mental disease, defect or disorder (§ 1026.5, subd. (b)). "[W]hile it is obvious that confining a person acquitted under Penal Code section 1026 in a state hospital serves to protect society from that person's unreasonable acts and impulses, this sequestration likewise serves the patient by providing a setting for delivering treatment and services which may assist him or her towards mental health. The primary purpose of the state hospital system is to provide for the care, treatment and education of its mentally disordered patients." (*Department of Developmental Services* v. *Ladd* (1990) 224 Cal.App.3d 128, 137 [273 Cal.Rptr. 485].)

*Juarez* v. *Superior Court, supra,* 196 Cal.App.3d 928 addressed the same question as the one before us. In *Juarez,* the defendant was found not guilty by reason of insanity of assault with a deadly weapon. During a jury trial on his fourth commitment extension petition, his counsel expressed doubts about his competency to stand trial and sought a determination of present sanity under section 1368. Juarez was found incompetent and was committed to Atascadero State Hospital. After several months, the medical director of Atascadero submitted a report under section 1370, subdivision (b)(1) advising the court that there was little likelihood of Juarez regaining his sanity in the foreseeable future and recommending the institution of a Lanterman-Petris-Short conservatorship. The trial court declined to follow the recommendation in the report, and Juarez sought a writ of mandate.

The court found that proceedings to determine present sanity (§ 1367 et seq.) do not apply to section 1026.5 extension proceedings. "The statutory scheme was designed to assure that a criminal defendant is competent at the time he is tried for an offense. It has no application to the trial on a petition to extend the commitment of a defendant who has been found not guilty by reason of insanity. [¶] . . . Petitioner is not threatened with penal treatment. He has had his criminal trial and been adjudicated not guilty by reason of insanity. The only remaining issue is how long he must remain committed to a state hospital for treatment." (*Juarez* v. *Superior Court, supra,* 196 Cal.App.3d at pp. 931-932.)[3]

The civil nature of section 1026.5 proceedings was also emphasized in *People* v. *Superior Court (Williams)* (1991) 233 Cal.App.3d 477 [284

[3]Angeletakis cites *People* v. *Powell* (1986) 180 Cal.App.3d 469 [225 Cal.Rptr. 703] to support his position that section 1368 applies to section 1026.5 proceedings. In fact, the *Powell* court held the trial court's failure to order a section 1368 hearing was error during a section 1026.5 hearing, but a close reading of the opinion reveals confused reasoning. The committee had been found to have knowingly and intelligently waived his right to counsel during previous hearings on restoration of sanity (§ 1026.2), and represented himself in the section 1026.5 hearing. Despite evidence that the committee was undergoing a major psychological breakdown, the trial court allowed him to continue to represent himself. The Court of

Cal.Rptr. 601]. "No criminal adjudication is involved. The recommitment procedures do not even come into play until after there has been a determination that the individual has committed an act for which he would be criminally liable if he were sane. [Citation.] Thus, it is clear that recommitment proceedings are not directed to the prosecution of an individual for an act or offense, since that adjudication has already been completed. There is no act or offense which is the subject of the recommitment proceedings." (*Id.* at p. 485.)

## II

■■■ Angeletakis argues even if the right to be mentally competent during a commitment extension hearing is not explicitly required by statute, it is guaranteed under fundamental principles of due process. He points to language in section 1026.5, subdivision (b)(7), which states: "The [committee] shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees."

In *Pate v. Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836], the United States Supreme Court held the trial of an accused person while he is legally incompetent violates due process. But as we have discussed above, a person subject to a commitment extension hearing is neither "accused" nor facing "conviction." Although a person facing commitment is certainly entitled to due process,[4] it is flexible and does not call for the same procedures in every situation. (*People v. Tilbury* (1991) 54 Cal.3d 56, 68 [284 Cal.Rptr. 288, 813 P.2d 1318].)

In *Tilbury*, the Supreme Court held a person previously found not guilty by reason of insanity had no due process right to a jury trial when moving for supervised outpatient status. The court stated, "[T]he involvement of a liberty interest does not by itself implicate the right to a jury. . . . Instead, the importance of the insanity acquittee's liberty interest is reflected by such a person's right to the substantial procedural safeguards associated with trials, including, among other things, the right to counsel, to a detached and

Appeal found the trial court did not err in failing to reexamine the committee's waiver of counsel under *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], but did err in failing to appoint counsel and conduct a hearing under section 1368 to determine his competency to stand trial once evidence was introduced to suggest he was unable to assist in his own defense. Thus, the court used 1368 as a roundabout way to relieve an incompetent defendant from the exercise of his right of self-representation and did not discuss the issue before us. (See *People v. Burnett* (1987) 188 Cal.App.3d 1314 [234 Cal.Rptr. 67].)

[4] " '[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.' " (*Jones v. United States* (1983) 463 U.S. 354, 361 [77 L.Ed.2d 694, 703, 103 S.Ct. 3043].)

neutral judicial officer, to present evidence, and to cross-examine adverse witnesses." (54 Cal.3d at p. 69.)

■ Notwithstanding their essentially civil nature, section 1026.5 proceedings incorporate many procedural safeguards related to criminal prosecutions. The statute itself provides that the committee has the right to counsel and to a jury trial. And judicial decisions have established that a unanimous jury must determine the committee's dangerousness beyond a reasonable doubt. (*People* v. *Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373]; *People* v. *Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352].) Furthermore, the committee has the right to confront and cross-examine witnesses. (*People* v. *Wolozon* (1982) 138 Cal.App.3d 456 [188 Cal.Rptr. 35].)

But not all procedural safeguards relating to criminal proceedings are necessary in section 1026.5 proceedings, nor are they required by the statute. "The statutory language [incorporating constitutionally guaranteed criminal procedural rights] merely codifies the application of constitutional protections to extension hearings mandated by judicial decision. It does not extend the protection of constitutional provisions which bear no relevant relationship to the proceedings." (*People* v. *Superior Court* (*Williams*), *supra*, 233 Cal.App.3d at p. 488.)

■ *Tilbury* set out three factors to be weighed when determining whether a particular set of procedural safeguards affords adequate due process: " '[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' [Citations.]" (*People* v. *Tilbury*, *supra*, 54 Cal.3d at p. 69.)

■ After weighing these factors, we conclude due process does not include the right to be mentally competent during a commitment extension hearing. Angeletakis will be confined and receive treatment for his mental condition whether his commitment is extended under section 1026.5 or such proceedings are suspended under section 1368.[5] While we appreciate the distinction between mental competence to stand trial and dangerousness to others due to a mental disease, defect, or disorder, we think the interests of

---

[5]Contrary to the assertions of counsel, we see no basis for the conclusion that treatment to restore a committee's competence to stand trial would be superior to treatment designed to address his underlying mental condition.

a person facing a commitment extension are adequately protected by competent counsel and the other procedural safeguards afforded him. Requiring the court to suspend proceedings until the committee is able to understand the nature of the proceedings and assist in the conduct of his "defense" adds minimal protection in this context, especially when balanced against the administrative burdens involved.

The judgment is affirmed.

Sills, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied May 20, 1992, and appellant's petition for review by the Supreme Court was denied July 23, 1992.