[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1459 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1460 
OPINION
The Sexually Violent Predators Act (SVPA) (Welf. Inst. Code, § 6600
et seq.)[1] authorizes the state to identify individuals who suffer from mental disorders that predispose them to commit violent sexual crimes and to confine and treat them until they no longer threaten society. (People v. Allen (2008) 44 Cal.4th 843, 857 [80 Cal.Rptr.3d 183,187 P.3d 1018] (Allen).) A proceeding under the SVPA is civil in nature and, although it may result in the involuntary commitment of the defendant, is not equivalent to a criminal prosecution. (Allen, at pp. 860-861.) Nonetheless, because it involves a significant deprivation of liberty, a defendant in an SVPA proceeding is entitled to due process protections. (Allen, at p. 862; see People v. McKee (2010) 47 Cal.4th 1172,1188 [104 Cal.Rptr.3d 427, 223 P.3d 566] (McKee) ["[t]here is no question that civil commitment itself is constitutional so long as it is accompanied by the appropriate constitutional protections"].)
In Allen, supra, 44 Cal.4th 843, applying the balancing test articulated in Mathews v. Eldridge (1976) 424 U.S. 319, 344 [47 L.Ed.2d 18,96 S.Ct. 893] and People v. Otto (2001) 26 Cal.4th 200, 210 [109 Cal.Rptr.2d 327, 26 P.3d 1061], a unanimous Supreme Court held the defendant in an SVPA proceeding has a right under the due process clauses of the federal and state Constitutions to testify over the objection of his or her counsel. (Allen, at pp. 869-870.) Does that same balancing test preclude the state from proceeding with an initial SVPA commitment trial[2] while the defendant is incompetent — that is, unable, as a result of mental disorder or developmental disability, to understand the nature of the proceedings or to assist his or her counsel in the conduct of a defense in a rational manner? Although the issue is not free from doubt, [3] we believe the answer must be yes. The private interests at stake are high: a substantial limitation on the defendant's liberty, the stigma of being classified as a sexually violent predator and subjection to unwanted treatment. The dignitary interest of the defendant subject to the SVPA commitment proceeding — his or her ability to be an active participant, rather than being relegated to the role of a mere spectator — is strong. And the risk of an erroneous finding that the defendant is a sexually violent predator and *Page 1462 
the probable value in reducing this risk by proceeding on an SVPA petition only against a competent defendant are at least as great as inAllen, in which the defendant sought to testify on his own behalf over the objection of his counsel in an SVPA extension proceeding. On the other hand, the state's compelling interest in both protecting the public and providing appropriate treatment to those individuals found to be sexually violent predators will not be significantly burdened by a threshold requirement that defendants in initial SVPA proceedings be mentally competent.
Accordingly, we grant the petition for writ of mandate filed by Mark Richard Wilson and direct respondent Los Angeles Superior Court to suspend the SVPA commitment proceedings now pending against Wilson, to conduct a hearing to determine his ability to understand the nature of the proceedings and to rationally assist his counsel in the conduct of a defense and, if Wilson is not now competent, to order Wilson to remain in appropriate custody pending restoration of his competency.
 FACTUAL AND PROCEDURAL BACKGROUND
Wilson was convicted in 1977 of rape by threat and placed on five years probation. In 1981, while still on probation for the 1977 offense, he sexually attacked a young woman. Wilson was convicted of forcible oral copulation; his probation was revoked; and he was sentenced to an aggregate state prison term of eight years and remanded to Patton State Hospital as a mentally disordered sex offender. He was discharged in May 1989.
In 1993, while a patient at Metropolitan State Hospital, Wilson was convicted of assault with a deadly weapon and sentenced to nine years in prison. Prior to his release on parole, he was found to meet the criteria for a mentally disordered offender and was committed to Atascadero State Hospital for treatment. (Pen. Code, § 2962.) In April 1999, while receiving treatment at Atascadero, the Director of Mental Health designated two mental health professionals to evaluate Wilson to determine whether, in addition to being a mentally disordered offender, he is also a sexually violent predator within the meaning of the SVPA.[4]
Both psychologists concluded Wilson has a mental *Page 1463 
disorder that makes it likely he will engage in predatory sexual violence if he is released from custody without appropriate treatment.
In May 1999 the People filed a petition to commit Wilson as a sexually violent predator. (§ 6601, subd. (a).) In addition to identifying Wilson's two prior sex-related convictions, the petition alleged Wilson has a diagnosed mental disorder, is a danger to the health and safety of others and is likely to engage in sexually violent and predatory criminal behavior upon his release from custody. (§ 6601, subds. (f), (h) (i).) Wilson was arraigned on the petition on May 13, 1999, and the public defender was appointed as counsel. (§ 6603.) Wilson remained in custody pending a probable cause hearing on the sexually violent predator petition.
After multiple continuances, many of which were requested by Wilson,[5]
the trial court held a probable cause hearing in December 2004. The court found probable cause to believe Wilson suffered from a diagnosed mental disorder and was likely to engage in sexually violent and predatory behavior upon his release. Since the probable cause determination, Wilson has remained in the custody of the state hospital pending trial on the SVPA petition. (§ 6602, subd. (a).)
In February 2009 Wilson's counsel moved to stay the SVPA commitment proceedings pending a determination of Wilson's competency. The motion papers included reports from mental health professionals opining that Wilson was delusional and psychotic and unable to comprehend reality. After submission of written briefs and a hearing, the trial court denied the motion, concluding Wilson had no statutory right to be mentally competent during the civil SVPA proceedings and, in light of the procedural protections provided by statute, including the right to counsel, it would not violate Wilson's right to due process to proceed with the SVPA trial even if he were mentally incompetent.
On May 20, 2009 Wilson petitioned this court for a writ of mandate to compel the trial court to initiate mental competency proceedings. On June 17, 2009 we issued an order to show cause as to why the requested relief should not be granted and stayed all proceedings in the trial court pending further order of this court. On July 2, 2009 the People filed their return to the petition, and on July 17, 2009 Wilson filed his reply. *Page 1464 
 DISCUSSION
1. Overview of the SVPA
The procedures for civilly committing a person as a sexually violent predator pursuant to the SVPA were recently summarized in Allen: The process "begins when the Secretary of the Department of Corrections and Rehabilitation determines that an individual in the custody of the department may be a sexually violent predator, and the secretary refers the individual to the State Department of Mental Health for an evaluation. If two evaluators concur that the individual meets the statutory criteria of a sexually violent predator, the Director of Mental Health shall request the county in which the person was convicted of the offense for which he or she is incarcerated to file a petition for commitment under the SVPA. (§ 6601.)" (Allen, supra,44 Cal.4th at pp. 857-858; see also McKee, supra,47 Cal.4th at pp. 1185-1187.)
"If the trial court determines that the petition establishes `probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release,' the court shall order a trial to determine whether the person is a sexually violent predator. (§§ 6601.5, 6602.) The individual `shall be entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on his or her behalf, and to have access to all relevant medical and psychological records and reports.' (§ 6603, subd. (a).) If the individual is indigent, the court shall appoint counsel to assist the individual in obtaining an expert evaluation and expert assistance at trial. (Ibid.) To secure the individual's commitment, the district attorney must prove beyond a reasonable doubt that the person is a sexually violent predator. (§ 6604.) When a jury decides the case, its verdict must be unanimous. (§ 6603, subd. (f).)" (Allen, supra, 44 Cal.4th at p. 858.)
As amended in 2006, the SVPA provides if the trier of fact finds beyond a reasonable doubt the person is a sexually violent predator within the meaning of section 6600, "the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health. . . ." (§ 6604.)[6] A person committed as a sexually violent predator has the right pursuant to the SVPA to an annual medical review of his or her mental condition. (§ 6605, subd. (a).) If the report concludes the person no longer meets the definition of a sexually violent predator or conditional release is appropriate, the State Department of Mental Health *Page 1465 
must authorize the person to petition the committing court for release (§ 6605, subd. (b)). If the court determines there is probable cause to believe the person's mental disorder has so changed that he or she is not a danger to the health and safety of others and is not likely to engage in sexually violent criminal activity, the court must set a hearing to determine whether the person's release or conditional release is appropriate. (§ 6605, subd. (c); McKee, supra, 47 Cal.4th at p. 1187.)
2. Due Process Protections and SVPA Proceedings
The conviction of an accused person while he or she is legally incompetent violates due process. (Pate v. Robinson (1966) 383 U.S. 375,378 [15 L.Ed.2d 815, 86 S.Ct. 836]; People v. Hale (1988) 44 Cal.3d 531,539 [244 Cal.Rptr. 114, 749 P.2d 769]; see Drope v. Missouri (1975)420 U.S. 162, 171 [43 L.Ed.2d 103, 112-113, 95 S.Ct. 896] ["[i]t has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial"].) "`"Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so."'" (People v. Pokovich (2006)39 Cal.4th 1240, 1250 [48 Cal.Rptr.3d 158, 141 P.3d 267], quoting Cooperv. Oklahoma (1996) 517 U.S. 348, 354 [134 L.Ed.2d 498, 116 S.Ct. 1373].)
Because SVPA proceedings are civil in nature — designed not to punish the defendant but to provide treatment for him or her and to protect the public from sexual predators — a defendant facing involuntary commitment as a sexually violent predator is not entitled to the full panoply of rights recognized in criminal cases. (See Allen, supra,44 Cal.4th at pp. 861-862.) Determining which procedural protections, in addition to those mandated by statute, must be afforded in an initial SVPA commitment proceeding requires the balancing of four factors: "`(1) [T]he private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official.'" (Allen, supra, 44 Cal.4th at pp. 862-863; accord, People v. Otto, supra,26 Cal.4th at p. 210; see also Mathews v. Eldridge, supra,424 U.S. at p. 344.) The Supreme Court's application of this *Page 1466 
four-factor balancing test in Allen is the essential starting point for determining whether Wilson has a right under the due process clauses of the United States and California Constitutions to an evaluation of his mental competency and, if not competent, to a stay of the initial SVPA commitment proceedings until his competency is restored.[7]
In Allen, supra, 44 Cal.4th 843 the Supreme Court considered whether a defendant in an SVPA proceeding had a due process right to testify over his or her counsel's objection. (See 44 Cal.4th at p. 870.) The court began its analysis by identifying the private interests at stake in an SVPA commitment proceeding — the risk of "`significant limitations on [the defendant's] liberty, the stigma of being classified as [a sexually violent predator], and subjection [of the defendant] to unwanted treatment.'" (44 Cal.4th at p. 863, third bracketed insertion added.) The risk of the deprivation of those significant individual interests, the court recognized, is "scarcely mitigate[d]" by the fact that the commitment is civil rather than criminal. (Ibid.)
Second, the court found the risk of an erroneous deprivation of the SVPA defendant's liberty interest, when balanced against the probable value in allowing the defendant to testify over the objection of his or her counsel, weighed heavily in favor of permitting the defendant to testify, because the defendant's participation in the proceedings through testimony at trial could greatly enhance the reliability of the outcome. (See Allen, supra, 44 Cal.4th at p. 866 ["Because the testimony of a defendant typically will concern his or her conduct, this testimony may relate to information that is critical to the experts' testimony. . . . In some cases, the defendant's testimony may raise a reasonable doubt concerning the facts underlying the experts' opinions. Accordingly, in every case there exists a risk that allowing counsel to preclude the defendant from testifying will lead to an erroneous deprivation of rights."].)
Third, the court found the state's "strong interest in protecting the public from sexually violent predators, and in providing treatment to th[ose] individuals" is furthered, rather than undermined, by allowing the defendant to testify at trial notwithstanding his or her counsel's objection. (Allen, supra, 44 Cal.4th at p. 866; see also ibid.
["[b]ecause the defendant's participation in the proceedings through his or her testimony at trial generally enhances the reliability of the outcome, the recognition of a right to testify over the *Page 1467 
objection of counsel may serve the government's interest in securing an accurate factual determination concerning the defendant's status as a sexually violent predator"].)
Finally, the court observed, the SVPA defendant's "dignity interest" in presenting his or her side of the story is greatly impaired in SVPA proceedings if the defendant's counsel ignores his or her client's desire and refuses to allow the defendant to testify. In such cases the SVPA defendant, with no right of self-representation, is reduced to "a mere spectator, with no power to attempt to affect the outcome." (Allen, supra,44 Cal.4th at p. 869; see ibid. [because "denial of a right to testify over the objection of counsel would impair the defendant's ability to be heard, we conclude that the fourth factor weights in favor of allowing the defendant to testify against the advice of counsel"].)
Wilson insists Allen is dispositive here: Because a witness must be competent in order to testify (see Evid. Code, § 701, subd. (a)), necessarily the defendant who has a personal, due process right to testify on his or her own behalf at an SVPA proceeding must have the corollary due process right to be mentally competent during those proceedings. Yet Allen actually held only that a defendant in an SVPA proceeding has the right "to testify, in accordance with the rules of evidence and procedure, over the objection of counsel." (Allen, supra,44 Cal.4th at p. 870.) The inadmissibility of an incompetent defendant's testimony does not deprive a defendant of his or her due process right to testify any more than limiting testimony to relevant matters or other evidentiary rules restricting the scope of proffered testimony undermines that right. The right to testify, even if rooted in the due process clauses of the federal and California Constitutions, is still subject to evidentiary disqualifications. (Cf. People v. Boyette (2002)29 Cal.4th 381, 427-428 [127 Cal.Rptr.2d 544, 58 P.3d 391] ["`[a]s a general matter, the [proper] "[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense"'"].)
 3. The Trial in an Initial SVPA Commitment Proceeding Cannot Be Held While the Defendant Is Incompetent
Although the narrow holding in Allen, supra, 44 Cal.4th 843, does not itself compel the conclusion that the trial in an initial SVPA commitment proceeding cannot be held while the defendant is incompetent, its analytic framework — the balancing of the four factors relevant to a determination of the due process protections required in a particular civil proceeding — necessarily leads to that result. First, as the court recognized, the private interests at stake in an SVPA proceeding — the affirmative restraint on liberty through involuntary commitment and the stigma of being classified as a *Page 1468 
sexually violent predator — are substantial. (Allen, at p. 863; seePeople v. Otto, supra, 26 Cal.4th at p. 210.) Indeed, because the issue before us is whether an initial SVPA hearing can be held while the defendant is incompetent, while the question addressed in Allen was whether the defendant had a right to testify at a hearing to extend his commitment (see Allen, at p. 849), the fundamental liberty interest at stake here is arguably even greater than that in Allen. (See McKee,supra, 47 Cal.4th at p. 1191 [due process requirements for initial SVPA commitment proceedings greater than those for subsequent proceedings to determine whether defendant should be released].)
Second, the risk of an erroneous deprivation of liberty is at least as great in subjecting an incompetent defendant to an SVPA commitment proceeding as it is in precluding a defendant from testifying over the objection of his or her counsel. A mentally incompetent defendant is unable to dispute facts, challenge admissible hearsay evidence (seePeople v. Otto, supra, 26 Cal.4th at pp. 214-215 [circumstances of predicate offense in SVPA proceeding may be established by hearsay evidence]) or contradict erroneous factual assumptions used by expert witnesses, factors the Allen court found critical to ensuring the reliability of the proceedings. (See Allen, supra, 44 Cal.4th at p. 867.)
Those risks are neither eliminated nor even substantially ameliorated by the SVPA defendant's statutory right to be represented by counsel. Because a mentally incompetent defendant, by definition, lacks a rational and factual understanding of the proceedings against him, as well as the "`sufficient present ability to consult with his [or her] lawyer with a reasonable degree of rational understanding'" (Dusky v. United States
(1960) 362 U.S. 402 [4 L.Ed.2d 824, 825, 80 S.Ct. 788, 789]; accord,Indiana v. Edwards (2008) 554 U.S. [171 L.Ed.2d 345, 128 S.Ct. 2379,2383]), he or she is unable to discuss the case or assist counsel in any meaningful way, severely hampering counsel's ability to effectively challenge the People's evidence, whether it be directed to the circumstances surrounding the defendant's predicate offenses (see Peoplev. Otto, supra, 26 Cal.4th at pp. 214-215) or the factual assumptions used by expert witnesses to classify him or her as a sexually violent predator (see, e.g., People v. Hubbart (2001) 88 Cal.App.4th 1202, 1234
[106 Cal.Rptr.2d 490] [details of prior uncharged sexual assaults admissible to establish defendant was sexually violent predator; "[a]lthough there was expert testimony on those issues, the details of the crimes were helpful for the jury's understanding of the experts' opinions and diagnoses"]).
For the same reason, the mentally incompetent defendant's dignity interest in meaningfully participating in the proceedings (the fourth factor) is also wholly undermined if he or she is forced to stand trial in an SVPA commitment proceeding. In such circumstances, the defendant is a "mere spectator" at the SVPA proceeding, with little, if any, power to affect the *Page 1469 
outcome. (Allen, supra, 44 Cal.4th at p. 869; see also Drope v.Missouri, supra, 420 U.S. at p. 171 ["`the mentally incompetent defendant, though physically present in the courtroom, is in reality afforded no opportunity to defend himself'"].)
On the other side of the scale, of course, is the state's compelling interest in protecting the public from a sexually violent predator and providing appropriate treatment for the individual defendant. (Allen,supra, 44 Cal.4th at p. 857; see People v. Vasquez (2001) 25 Cal.4th 1225,1232 [108 Cal.Rptr.2d 610, 25 P.3d 1090] [government has substantial interest in protecting public from sexually violent predators and providing treatment to those persons]; see also Hubbart v. Superior Court
(1999) 19 Cal.4th 1138, 1151 [81 Cal.Rptr.2d 492, 969 P.2d 584] ["[T]he state may involuntarily commit persons who, as the result of a mental impairment, are unable to care for themselves or are dangerous to others. Under these circumstances, the state's interest in providing treatment and protecting the public prevails over the individual's interest in being free from compulsory confinement."].)
Both of these interests — protecting the public and providing treatment — will be compromised, the People argue, if a threshold mental competency requirement is imposed on initial SVPA commitment proceedings. UnlikeAllen, which involved only the minimal burden of allowing an additional witness (the defendant) to testify at an SVPA hearing, here, the People insist, the due process right advanced by Wilson could undermine the entire SVPA process for mentally incompetent sexually violent predators. Suspending the SVPA trial pending restoration of the defendant's competency could delay proceedings for years, and some defendants might never regain competency (and thus could never be found to be a sexually violent predator).
The People attempt to illustrate the unacceptable consequences that would flow from recognizing a due process right to be competent during an initial SVPA commitment proceeding by posing a series of questions: What is to become of the mentally incompetent defendant found by two mental health experts to be a danger to society and likely to engage in sexually violent and predatory behavior if released? Under what authority can the alleged sexually violent predator who has served his or her sentence for the offense(s) for which he or she had been convicted remain in custody, if any? How will he or she receive appropriate treatment directed to sexually violent behavior if he or she, because of incompetency, has not stood trial as a sexually violent predator? The answer to each of these questions, the People suggest, is the same: The mentally incompetent defendant alleged to be a sexually violent predator would have to be released.
The People's questions are reasonable; their proposed answer flawed. At the threshold, the People's response to Wilson's claim of a right to be tried *Page 1470 
and committed as a sexually violent predator only if he is mentally competent ignores the essential fact that the state's interest in protecting the public and providing treatment is inexorably tied to the reliability of the SVPA proceedings. The state "`has no interest in confining individuals involuntarily if they are not mentally ill or if they do not pose some danger to themselves or others.'" (McKee, supra,47 Cal.4th at p. 1189, quoting Addington v. Texas (1979) 441 U.S. 418, 426
[60 L.Ed.2d 323, 99 S.Ct. 1804].) As recognized in numerous appellate decisions, the reliability of an adversarial proceeding is severely compromised if a defendant is unable to assist or meaningfully communicate with counsel or to understand the proceedings. (See Peoplev. Pokovich, supra, 39 Cal.4th at p. 1250 ["[t]he policy that a mentally incompetent person not be subjected to a trial has its roots in our constitutional, statutory, and common law"]; Cooper v. Oklahoma, supra,517 U.S. at p. 354; see also Drope v. Missouri, supra, 420 U.S. at p. 171
["[o]ne who becom[es] `mad' after the commission of an offense should not be arraigned for it `because he is not able to plead to it with that advice and caution that he ought.' Similarly, if he became `mad' after pleading, he should not be tried, `for how can he make his defense?'"], quoting 4 Blackstone, Commentaries 24.)[8]
Moreover, there is simply no merit to the People's assertion any individual with a diagnosed mental disorder, who is sexually dangerous and predatory, and also mentally incompetent, must be released to society following completion of his or her prison sentence if a due process right not to be tried and committed under the SVPA while incompetent is recognized. As discussed, section 6602 requires a probable cause hearing following the filing of an SVPA petition. If the judge determines there is probable cause to believe the defendant is likely to engage in sexually violent predatory criminal behavior upon his or her release, the judge must order the defendant to "remain in custody in a secure facility until a trial is completed." (§ 6602, subd. (a).) When, as here, the issue of a defendant's competency arises only after a probable cause determination that the defendant is a sexually violent predator, *Page 1471 
the defendant can be held in custody in a state hospital and treated in accordance with the SVPA under section 6602 pending restoration of his or her competence.[9] Thus, even if found incompetent and thus not now subject to commitment under the SVPA, Wilson will not be released from his current confinement.
Even if, unlike Wilson, some defendants could not be held under these provisions of the SVPA (because their incompetency either precedes or pervades the probable cause hearing), an incompetent defendant who is likely to engage in sexually violent predatory criminal behavior should be subject to involuntary civil commitment under different statutory schemes directed to mentally disordered individuals who present a danger to others, including the Lanterman-Petris-Short (LPS) Act (§ 5000 et seq.)[10] and the Mentally Disordered Offenders (MDO) Act (Pen. Code, § 2960 et seq.).[11] (See, e.g., People v. Lara (2010) 48 Cal.4th 216
[when petition for extension of commitment of MDO or person found not guilty by reason of insanity (NGI defendant) is filed too late to allow defendant reasonable time to prepare for trial, defendant is entitled to release from custody under MDO and NGI statutory schemes pending commitment extension trial; nonetheless, defendant may still be subject to custody under LPS Act].)
Finally, to the extent there may be, at least in theory, a narrow gap in existing civil commitment statutes that arguably prevents the state from retaining a defendant in confinement pending restoration of competency, the remedy is for the Legislature to authorize such a commitment procedure, not to deny defendants their due process rights. (See, e.g., In re Moye (1978) *Page 1472 22 Cal.3d 457, 467 [149 Cal.Rptr. 491, 584 P.2d 1097] [finding unconstitutional existing statutory procedures for extending the confinement of persons committed to a state institution following acquittal of a criminal offense on the ground of their insanity beyond the maximum term of punishment for the underlying offense and directing the state to utilize the more demanding procedures in the former Mentally Disordered Sex Offender Act "[t]o the extent practicable, and in the absence of further legislation" on the subject]; see also Conservatorshipof Hofferber (1980) 28 Cal.3d 161, 176-178 [167 Cal.Rptr. 854,616 P.2d 836] [finding former § 5008, subd. (h)(3), authorizing involuntary conservatorship for an incompetent criminal defendant, constitutionally inadequate because it lacked a requirement of proof beyond a reasonable doubt that the defendant represented a current danger to others as a result of a mental disorder]; In re Smith (2008)42 Cal.4th 1251, 1255, 1269-1270 [73 Cal.Rptr.3d 469, 178 P.3d 446] [narrowly construing § 6601, subd. (a)(2), which prohibits dismissal of SVPA petition because defendant's custody was unlawful if unlawful custody was the result of a good faith mistake of fact or law, and directing release of defendant against whom SVPA petition was pending, "to avoid difficult constitutional questions"].)
People v. Calderon (2004) 124 Cal.App.4th 80 [21 Cal.Rptr.3d 92], in which this court considered the admissibility in an SVPA commitment proceeding of evidence the defendant was also amenable to an LPS Act involuntary conservatorship, does not compel a different result. In agreeing with the trial court that such evidence was irrelevant and, if admitted, might have misled the jury into thinking the defendant was not a sexually violent predator merely because he could be placed in an involuntary conservatorship, we observed the LPS Act and the SVPA were intended to serve different purposes. Attempts by the defendant to substitute an involuntary conservatorship under the LPS Act for SVPA confinement, we explained, would frustrate the SVPA's purpose of treating and confining "a `small but extremely dangerous group of sexually violent predators.'" (Calderon, at p. 90.)
The constitutional issue presented in this proceeding is far different from the evidentiary question in Calderon. By identifying alternatives to the release of incompetent defendants in situations in which the SVPA commitment proceedings may be stayed for an indefinite period, we do not intend to suggest the LPS Act is the functional equivalent of the SVPA. Rather, we simply observe, as have the Supreme Court and the Legislature in analogous circumstances, that involuntary confinement and treatment under the LPS Act is available when a defendant's mental incompetency prevents him or her on due process grounds from being subjected to initial commitment proceedings under the SVPA. (Cf. People v. Lara, supra,48 Cal.4th at p. 236 [in circumstances where MDO or NGI defendant remains a danger to society but, under those statutory schemes, is entitled to release pending trial on a petition to extend his or her commitment, LPS commitment is viable alternative; this *Page 1473 
approach "honors due process, and ensures both that the defendant will be treated and the public protected"]; Pen. Code, § 1370, subds. (b), (c) [if there is no substantial likelihood that criminal defendant will regain competency, civil commitment should be sought under LPS Act].)
The People also suggest the LPS Act is inadequate to protect the government's interest in treating sexually violent predators because treatment under the LPS Act would be directed toward restoring competency and not to the defendant's sexually violent and predatory predispositions. The People fail to explain why the LPS Act treatment would be so focused or provide any support for their assertion. Nonetheless, even assuming its accuracy, the state's interest in providing appropriate treatment to a sexually violent predator would appear to be bolstered, rather than undermined, by a threshold competency requirement, since treatment of the predatory behavior of a mentally incompetent is typically recognized by experts in the field as futile. (See Abrams et al., The Case for a Threshold for Competency in SexuallyViolent Predator Civil Commitment Proceedings (2007) vol. 28, issue 3, Am. J. Forensic Psychiatry 7, 22-23 ["[A]ttempting to curb the compulsively lurid behaviors of a SVP [sexually violent predator] that precipitate within the matrix of a florid psychosis or severe cognitive impairment would prove futile. This realization is further buttressed by the fact that, aside from pharmacological intervention . . . currently available treatments for SVPs find [their] provenance in rational, goal-directed, even insightful cognition."].) Of course, amenability to treatment is not a constitutionally mandated precondition to commitment as a sexually violent predator. (Kansas v. Hendricks (1997) 521 U.S. 346,366 [138 L.Ed.2d 501, 117 S.Ct. 2072].)
 4. Neither the Fourth District's Decision in People v. Angeletakis nor the Out-of-state Authority Cited by the People Justifies Proceeding with an SVPA Commitment Trial While the Defendant Is Incompetent
In People v. Angeletakis (1992) 5 Cal.App.4th 963 [7 Cal.Rptr.2d 377] (Angeletakis) the Court of Appeal held an NGI defendant involuntarily committed under Penal Code section 1026.5[12] had no due process right to be mentally competent during a hearing to extend his commitment. The court explained, "[T]he interests of a person facing a commitment extension are adequately protected by competent counsel and other procedural safeguards afforded him [or her]. Requiring the court to suspend proceedings until the *Page 1474 
committee is able to understand the nature of the proceedings and assist in the conduct of his `defense' adds minimal protection in this context, especially when balanced against the administrative burdens involved." (Angeletakis, at pp. 970-971.)
Angeletakis, supra, 5 Cal.App.4th 963, however, involved a commitment extension hearing, not the initial commitment proceeding at issue in the case at bar. A defendant like Wilson confronting a trial for his or her initial commitment, be it an NGI or SVPA commitment proceeding, is entitled under the due process clauses of the federal and California Constitutions to a higher level of procedural protections than is required for subsequent extension proceedings under the same statutory scheme. (See McKee, supra, 47 Cal.4th at p. 1191.) As the Supreme Court recently explained in McKee, once the findings that serve as the basis for the initial commitment have been made, any subsequent extension of the period of institutionalization poses less risk of improper factfinding, and, therefore, requires less rigorous due process protection. (See ibid, [initial sexually violent predator finding is "for present constitutional purposes, the functional equivalent of the NGI acquittal in Jones [v. United States (1983) 463 U.S. 354 [77 L.Ed.2d 694,103 S.Ct. 3043]]"; once a beyond-a-reasonable-doubt finding has been made in connection with initial commitment, the danger of an improper recommitment is "greatly diminished"].)
We are well aware, as the People note, that several other jurisdictions have rejected a threshold mental competency requirement in sexually violent predator trials. (See, e.g., Commonwealth v. Nieves (2006)446 Mass. 583 [846 N.E.2d 379]; State ex rel. Nixon v. Kinder
(Mo.Ct.App. 2003) 129 S.W.3d 5; State v. Cubbage (Iowa 2003)671 N.W.2d 442; In re Commitment of Fisher (Tex. 2005) 164 S.W.3d 637; but see In re Commitment of Branch (Fla.Dist.Ct.App. 2004) 890 So.2d 322
[recognizing a due process right to be competent in sexually violent predator commitment proceeding when state elects to rely on unchallenged hearsay to establish any element of its case].) These jurisdictions have relied primarily on the fact a sexually violent predator commitment proceeding is civil, not criminal, and concluded statutorily afforded procedural protections, including the right to counsel, adequately protect the defendant from an erroneous deprivation of liberty. (See, e.g.,Nixon, at pp. 9-11; Cubbage, at p. 448; Fisher, at pp. 653-654; see alsoNieves, 846 N.E.2d at p. 386 [the choices provided a defendant in sexually violent predator commitment proceeding are "quintessentially the types of choices that attorneys regularly make with respect to their competent clients"; accordingly, representation by counsel is adequate to protect defendant's due process rights in sexually violent predator civil commitment proceeding].) *Page 1475 
We are unpersuaded by these decisions. Under established California law, and in particular Allen, supra, 44 Cal.4th 843, recognizing the civil nature of the SVPA commitment proceedings marks the beginning of the necessary due process analysis, not the end. For the reasons discussed above, balancing the factors articulated by the United States and California Supreme Courts to identify the procedural guarantees appropriate for this context under the due process clauses of the federal and California Constitutions, we hold the state may not proceed with an initial SVPA commitment trial while the defendant is incompetent.
 5. The Trial Court Has Inherent Power to Adopt Procedures to Hold a Competency Hearing in Connection with an SVPA Commitment Proceeding
Finally, the People urge us to reject a mental competency requirement for initial SVPA commitment proceedings because no statutory procedures are available to determine competency in SVPA cases or, indeed, in civil cases generally. Neither the authority nor the resourcefulness of the courts is as limited as the People suggest.
As the Supreme Court directed in In re Moye, supra, 22 Cal.3d at page 467
when confronting unconstitutional statutory procedures for extending the confinement of NGI defendants beyond the maximum term of punishment for the underlying offense, "in the absence of further legislation on the subject," the trial courts should proceed "[t]o the extent practicable" by adopting the procedures specified in an analogous statutory scheme. Similarly here, because the SVPA fails to provide for the determination of the defendant's legal competence, the procedures articulated in Penal Code sections 1368 and 1369, [13] "to the extent practicable," can be utilized. (See James H. v. Superior Court (1978) 77 Cal.App.3d 169, 175
[143 Cal.Rptr. 398] [adopting Pen. Code, § 1368's competency procedures in juvenile case; "[c]ourts have the inherent power to create new forms of procedure in particular pending cases" where, in absence of rule, "`court would be unable to function'"]; see generally Code Civ. Proc., §187 ["[w]hen jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically *Page 1476 
pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code"].)
 DISPOSITION
The petition is granted. Let a peremptory writ of mandate issue directing respondent Los Angeles County Superior Court to suspend the SVPA commitment proceedings now pending against Wilson; to conduct a hearing to determine his ability to understand the nature of the proceedings and to rationally assist his counsel in the conduct of a defense; if Wilson is not now competent, to order Wilson to remain in appropriate custody pending restoration of his competency; and to conduct further proceedings not inconsistent with this opinion.
Zelon, J., and Jackson, J., concurred.
[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] We refer to the initial SVPA commitment proceeding or trial to distinguish between the original involuntary civil commitment under the SVPA (§ 6601) — the issue in this case — and a hearing for release initiated by an individual previously adjudicated to be a sexually violent predator (§§ 6605, 6608).
[3] The question whether the trial in a commitment proceeding under the SVPA can be held while the defendant is incompetent is currently pending in the Supreme Court. (Moore v. Superior Court (2009) 174 Cal.App.4th 856
[94 Cal.Rptr.3d 771], review granted Sept. 17, 2009, S174633.) Although we are mindful our opinion will likely be short lived in light of Moore, its publication is mandated by the California Rules of Court. (See Cal. Rules of Court, rule 8.1105(c).)
[4] At the time the petition was filed in 1999 the SVPA defined a sexually violent predator as "a person who has been convicted of a sexually violent offense against two or more victims . . . and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Former § 6600, subd. (a), as amended by Stats. 1996, ch. 462, § 4, p. 2818.) Proposition 83, the Sexual Predator Punishment and Control Act: Jessica's Law, approved at the November 2006 general election, amended the definition to include individuals who have been convicted of a sexually violent offense against one or more victims. (§ 6600, subd. (a)(1).)
[5] At each hearing prior to his probable cause hearing, Wilson, through his counsel, waived the "good cause" requirement for continuing the probable cause hearing. (§ 6602, subd. (b).)
[6] Prior to the passage of Proposition 83, the SVPA had provided for an initial two-year commitment, subject to renewal upon petition by the People. (See former § 6604, as amended by Stats. 2000, ch. 420, § 3.)
[7] Although Wilson does not distinguish between his rights under the California and United States Constitutions, the analysis is similar for both. (See Allen, supra, 44 Cal.4th at p. 863, fn. 14 ["`[a]lthough the state and federal Constitutions differ somewhat in determining when due process rights are triggered, once it has been concluded that a due process right exists we balance similar factors under both approaches to decide what process is due'"].)
[8] To the extent the People suggest (without any statistical support) there is necessarily a large number of defendants properly identified as sexually violent predators who are also mentally incompetent, and thus argue the burden of conducting competency hearings for all such defendants will be considerable, they improperly conflate (and confuse) the concepts of mental disorder and mental incompetency. (See In re Qawi
(2004) 32 Cal.4th 1, 17 [7 Cal.Rptr.3d 780, 81 P.3d 224] ["`mental illness "often strikes only limited areas of functioning, leaving other areas unimpaired, and consequently . . . many mentally ill persons retain the capacity to function in a competent manner"'"].) Indeed, "`"[c]ompetence is not a clinical, medical, or psychiatric concept. It does not derive from our understanding of health, sickness, treatment, or persons as patients. Rather, it relates to the world of law, to society's interests in deciding whether an individual should have certain rights (and obligations) relating to person, property and relationships."'" (Ibid.) In other words, a defendant may be mentally disordered, resulting in sexually violent and predatory behaviors, but, from a legal perspective, quite competent to stand trial.
[9] Trial on the SVPA petition must occur within a "reasonable time" after the court's probable cause finding. (See People v. Litmon (2008)162 Cal.App.4th 383, 406 [76 Cal.Rptr.3d 122] [People's lengthy without-good-cause delay in bringing alleged sexually violent predator to trial following probable cause determination required dismissal of SVPA petition].) The question whether a "reasonable time" could be something less than the time necessary to restore the defendant to competency is not before us. As discussed in the text, however, if the delay were too long or if the defendant is unlikely ever to have his or her competency restored, involuntary commitment under another civil commitment statute might well be appropriate. (Cf. Pen. Code, § 1370, subds. (b), (c) [if there is no substantial likelihood that criminal defendant will regain competency, commitment should be sought under Lanterman-Petris-Short Act].)
[10] As the People acknowledge, competency is not a threshold requirement for civil commitment under the LPS Act, which does not rely on a prior adjudication of criminal conduct as a predicate for civil commitment. (See, e.g., § 5008.)
[11] A prisoner is eligible for MDO commitment if he or she has committed certain crimes of violence, including rape, forcible sodomy and oral copulation and lewd acts on a child under the age of 14 years. (See Pen. Code, § 2962, subd. (e).) However, in light of the holding inMcKee, supra, 47 Cal.4th at pages 1203-1204, that sexually violent predators and mentally disordered offenders are similarly situated for many purposes, we recognize the question whether mentally disordered offender proceedings may be initiated against an incompetent defendant must be addressed in an appropriate case.
[12] Penal Code section 1026.5, subdivision (a), allows for the involuntary commitment of defendants acquitted of their crimes by reason of insanity. Subdivision (b) of section 1026.5 authorizes recommitment beyond the maximum term authorized for their crime only after a recommitment hearing and a finding by the court that the NGI defendant poses a substantial danger of physical harm to others by reason of a mental disease, defect or disorder.
[13] Penal Code section 1368 authorizes the trial judge, upon a declared doubt of the defendant's mental competency, to suspend criminal proceedings and to hold a trial pursuant to procedures outlined in Penal Code section 1369. Among other things, Penal Code section 1369 authorizes the appointment of psychological experts, provides for the order of proceedings and articulates the preponderance-of-the-evidence burden-of-proof standard borne by the party seeking a finding of incompetency. *Page 1477