Filed 10/8/14  P. v. Esperanza CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059110 |
| v. | (Super.Ct.No. RIF1205106) |
| SHAWN LOUIS ESPERANZA, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John W. Vineyard and Michele D. Levine, Judges.*  Affirmed.

Appeals Unlimited and Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

*Judge Vineyard presided over the trial.  Judge Levine sentenced defendant.

1

Defendant Shawn Louis Esperanza lived apart from his estranged girlfriend and their three children. In the past, he had beaten one of those children, John Doe,[1] with a belt; as a result, he was subject to a criminal protective order prohibiting him from having any contact with Doe. Nevertheless, around Christmas 2012, when Doe was 15, defendant showed up for a visit. Defendant provoked an argument with Doe that turned physical; defendant threw Doe to the ground and choked him.

A jury found defendant guilty of felony infliction of physical punishment or injury upon a child (Pen. Code, § 273d, subd. (a)), witness intimidation (Pen. Code, § 136.1, subd. (b)(1)), and violation of a protective order (Pen. Code, § 273.6, subd. (a)). In a bifurcated bench trial, the trial court found one "strike" prior true. (Pen. Code, §§ 667, subds (b)-(i), 1170.12.) Defendant was sentenced to a total of eight years in prison, along with the usual fines, fees, and conditions.

Defendant now contends:

1. The trial court erred by excluding evidence that Doe was smoking marijuana.

2. The prosecutor committed misconduct by commenting on defendant's courtroom behavior in closing argument.

3. There was insufficient evidence that defendant's prior conviction for a sexual offense in Arizona actually constituted a strike.

---

[1] The trial court ordered that the alleged victim be referred to by this fictitious name. (Pen. Code, § 293.5.)

4.  The trial court erred by denying defendant's *Romero* motion.[2]

We find no reversible error.  Hence, we will affirm.

I

FACTUAL BACKGROUND

Defendant and Sandra Vergara had three children together; John Doe was the oldest.

In 2009, when Doe was 12, defendant beat him with a belt.  As a result, defendant was convicted of misdemeanor child abuse and became subject to a criminal protective order that prohibited him from having any contact with Doe.[3]

As of December 2012, defendant and Vergara were separated.  Defendant was living in Arizona.  Vergara was living with the children in Moreno Valley.  Doe was 15 years old.

Doe was five feet six inches tall and weighed about 100 pounds.  Defendant was six feet one inch tall and weighed about 220 pounds.

On December 22, 2012, defendant came to visit.  Vergara was surprised.  He had been talking about visiting, but she had told him "it wasn't a good idea . . . ."

---

[2]    A "*Romero* motion" is a motion to dismiss a strike prior in the interest of justice.  (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.)

[3]    The protective order was admitted as an exhibit but has not been transmitted to us.  We therefore rely on Vergara's testimony regarding the terms of the protective order.

3

Around 10:30 or 11:00 p.m., Doe was in his bedroom with his friend Gibran Donald. Defendant went to Doe's room and started making "weird sex remarks" about Doe's mother. Doe asked him to stop. Defendant started yelling at Doe, "kind of like provoking a fight." Defendant told Doe to punch him, so Doe did. Defendant also said, "You are going to do what I am saying."

Doe tried to leave the bedroom, but defendant blocked the doorway. Doe went all around the house, trying to get away from defendant and to leave, but defendant got in his way and pushed him back. Defendant said, "You are not leaving. You are going to talk about this." A television got broken when Doe tried to put it between himself and defendant. At some point, a mirror, a window, and a sliding glass door also got broken.

Doe picked up a phone. Defendant said, "What are you doing?" Doe replied, "I am calling the police." Defendant unplugged the phone and yanked it out of Doe's hands. Eventually, defendant "backed off," and Doe went back to his room.

About 20 minutes later, Doe and Donald heard Vergara scream. They came out of the bedroom and found defendant pushing Vergara against the wall. Doe said, "Let's go. Get away from him." He tried to open the front door, but defendant held it shut.

Defendant and Doe grappled with each other.[4] Defendant picked Doe up, then threw him down against a media cabinet; a VCR fell on Doe's head. Next, defendant

---

[4] Donald testified that Doe was "attacking" and "hitting" defendant, whereas defendant was "trying to restrain [Doe] because [Doe] is going crazy." However, he was impeached with his statements to a prosecution investigator, which — as he admitted — were inconsistent with his trial testimony.

started choking Doe. Donald tried to get defendant off Doe. Defendant said, "Oh, you want to be next," and put Donald in a headlock.

Vergara ran out the back door. When defendant realized that she had left the house, he chased her. Doe followed them both.

Vergara went to a neighbor's house and called 911. Defendant got mad; he grabbed Doe's little brother and said, "All right. I am leaving." Outside, in the front yard, Doe grabbed his little brother away from defendant. Defendant threw Doe down on top of his little brother, then started choking him again. When defendant "saw everybody looking at him," he ran away.

Doe sustained bumps on his head and red marks around his neck, along with cuts and scratches.

About two hours later, the police found defendant walking down the street, "heavily intoxicated," and arrested him.

II

THE EXCLUSION OF EVIDENCE THAT DOE WAS USING MARIJUANA

Defendant contends that the trial court erred by excluding evidence that Doe was smoking marijuana.

A.     *Additional Factual and Procedural Background.*

Defense counsel advised the trial court that he intended to ask both Doe and Donald "about their pot smoking." The prosecutor objected, "[T]here is no evidence of that."

5

Defense counsel responded that defendant had told the police that the argument started because there "was pot smoking going on in that house." The prosecutor stated, "[T]his was already asked of the victim at the preliminary hearing and . . . the victim already stated that none of that happened . . . . He was not smoking pot . . . ."

The trial court ruled: "[U]ntil there is admissible evidence . . . of any of the witnesses smoking pot, it is improper cross-examination. It will be disallowed. [¶] I am going to reserve on the issue that even if there is admissible evidence . . . whether it's relevant."

After a recess, defense counsel asked the trial court to "revisit" its ruling. He noted that, at the preliminary hearing, Doe had stated that Donald brought marijuana. The prosecutor noted again that Doe had denied actually smoking any marijuana.[5] The trial court declined to change its ruling.

---

[5] Doe's preliminary hearing testimony on the subject was as follows:

"Q Did you smoke any pot that day?

"A No.

"Q Do you know somebody named Gibr[a]n? [¶] . . . [¶] . . .

"A Yeah.

"Q Was he there that day?

"[PROSECUTOR]: Objection. Relevance. [¶] . . . [¶] . . .

"THE COURT: . . . [¶] Counsel, what's your offer?

"[DEFENSE COUNSEL]: Offer of proof is that there was marijuana being smoked that day. That was the impetus for the argument.

*[footnote continued on next page]*

6

While Doe was on the stand, one of the jurors submitted the question: "[W]ere alcohol or drugs found to be involved?"[6] In response, defense counsel asked yet again for permission "to question John Doe about his marijuana usage . . . ." The prosecutor objected again "that there is absolutely no evidence for it." The trial court still declined to change its ruling.

Finally, before Vergara testified, defense counsel asked whether he could ask her about marijuana use by Doe. The prosecutor objected, and the trial court precluded any cross-examination about "[u]se of marijuana unless there is independent evidence of it."

---

*[footnote continued from previous page]*

"THE COURT: All right. Overruled.

"THE WITNESS: He brang marijuana.

"[DEFENSE COUNSEL]: Move to strike, your Honor. Nonresponsive.

"THE COURT: Sustained. Granted.

"Q (BY [DEFENSE COUNSEL]:) I'm going to start again. Was Gibr[a]n there that day?

"A Yeah, he was there.

"Q Does Gibr[a]n smoke pot?

"A No.

"Q Gibr[a]n doesn't supply you with pot?

"A No. He has no money. He doesn't even have a job."

[6] As the trial court noted, it was unclear whether this question referred to alcohol or drug use by Doe or by defendant.

B.     *Analysis.*

"We review a trial court's rulings on the admission and exclusion of evidence for abuse of discretion.  [Citation.]"  (*People v. Chism* (2014) 58 Cal.4th 1266, 1291.)

Defendant argues that evidence that Doe was using marijuana would be relevant to the child abuse charge, because it would tend to show that he was merely exercising his privilege to administer reasonable parental discipline.  (See generally *People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050 [Fourth Dist., Div. Two].)[7]  It would also be relevant to the witness intimidation charge, because it would tend to show that he intended to talk to Doe about his marijuana use, not to prevent Doe from reporting a crime.[8]  He argues that the exclusion of such evidence violated his right to present a defense  and his right to confrontation.

All of this presumes that someone — Doe, Donald, and/or Vergara — would have testified that Doe was, in fact, using marijuana.  "It is improper to ask questions which

---

[7]     We assume, without deciding, that defendant did have a parental discipline privilege.  It could be argued, however, that because Vergara had de facto sole custody of Doe, and in particular, because defendant was subject to a restraining order, he did not have the right to discipline Doe.

[8]     Defendant makes some scattered references to self-defense, but he fails to explain how evidence of marijuana use would have related to this theory.  If Doe was the initial aggressor, defendant was entitled to claim self-defense, regardless of Doe's reason for the aggression.  And if defendant was the initial aggressor, he could not claim self-defense (see CALCRIM No. 3471) unless the aggression was privileged as parental discipline.  (*People v. Clark* (2011) 201 Cal.App.4th 235, 251, fn. 12.)  Finally, evidence of marijuana use would not have helped the jury decide who was the initial aggressor.  Thus, self-defense is not an independent theory of relevance.

clearly suggest the existence of facts which would have been harmful to [the other side] in the absence of a good faith belief that the questions would be answered in the affirmative, or with a belief that the facts could be proved, and a purpose to prove them, if their existence should be denied. [Citations.]" (*People v. Chojnacky* (1973) 8 Cal.3d 759, 766.) The record demonstrates that Doe would have denied using marijuana; at most, he might have admitted that Donald had some marijuana.[9] If defense counsel thought Donald or Vergara would testify otherwise, all he had to do was call them to testify outside the presence of the jury under Evidence Code section 402. He did not do so.

Thus, this case is governed by *People v. Capistrano* (2014) 59 Cal.4th 830. There, the defendant argued that the trial court erred by refusing to allow a witness to be cross-examined about whether she had engaged in drug dealing. The Supreme Court rejected this contention because the trial court had not absolutely prohibited such cross-examination; in fact, it had acknowledged that it would be relevant for impeachment. "Reasonably viewing the discussion, the court properly required only that [a party] demonstrate a good faith basis for asking such questions by, for example, identifying a potential witness to her having dealt drugs. [Citation.]" (*Id*. at p. 867); see also *People v.*

---

[9]     Even this is doubtful. Oddly, at the preliminary hearing, when Doe said, "He brang marijuana," defense counsel objected, even though this was what he claimed he was trying to prove. Moreover, Doe went on to testify that Donald did not smoke marijuana, did not supply him with marijuana, and did not have money to buy marijuana. One possibility is that Doe was actually asking a surprised question — "He brang marijuana?"

9

*Lomax* (2010) 49 Cal.4th 530, 580 ["the trial court properly prevented counsel from asking questions that lacked a good faith basis and invited jury speculation on claims that would not be given any evidentiary support."].)

For much the same reasons, defendant cannot show prejudice. Even if the trial court had allowed defense counsel to ask the questions, on this record, it does not appear that any witness would have testified that Doe was using marijuana.

Because it does not appear that the excluded evidence would have been helpful to defendant, there was no violation of his right to present a defense or his right to confront witnesses.

III

PROSECUTORIAL MISCONDUCT BY COMMENTING ON

DEFENDANT'S COURTROOM BEHAVIOR IN CLOSING ARGUMENT

Defendant contends that the prosecutor committed misconduct by commenting on his courtroom behavior in closing argument.

A.    *Additional Factual and Procedural Background.*

In closing argument, the prosecutor stated:

"[Y]ou are going to start thinking about the facts and how they apply to the law. Some things I want you to think about. The body language of the people who testified and also the body language of the defendant. [¶] . . . [¶] . . .

"Now, what about the defendant?  Huffing and puffing and making movements and gestures because he doesn't agree with it.  He doesn't agree with it because the truth hurts.  Those are things that you consider when you are applying the facts to the law."

Defense counsel did not object.

B.    *Analysis*.

"'The standards governing review of [prosecutorial] misconduct claims are settled. "A prosecutor who uses deceptive or reprehensible methods to persuade the jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such '"unfairness as to make the resulting conviction a denial of due process."'  [Citations.]  Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.'"  [Citation.]

"'"As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion — and on the same ground — the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety."'  [Citation.]"  (*People v. Hajek* (2014) 58 Cal.4th 1144, 1238.)

Here, defense counsel did not object.  Defendant therefore argues that an objection "would have been futile or worse because it would have emphasized or highlighted appellant's courtroom demeanor."  Defendant also argues that, if an objection was required, his trial counsel rendered ineffective assistance by failing to object.

11

Before dealing with these arguments, we must distinguish between two separate potential sources of prejudice. First, defendant could be prejudiced by his own courtroom behavior; the jury might notice it and hold it against him, even if the prosecutor never mentioned it. And second, defendant could be additionally prejudiced by the prosecutor calling attention to the behavior and asking the jury to consider it.

An objection to the asserted prosecutorial misconduct would not have been futile. The prosecutor gave the jury permission to consider defendant's courtroom behavior, but the trial court could take that permission away, promptly and authoritatively. Any additional harm the prosecutor had done could be undone.

Arguably, an objection, even if sustained, could not undo the harm done by defendant's own behavior; indeed, it might have made things worse by highlighting that behavior. Thus, competent counsel could choose not to object. (*People v. Stewart* (2004) 33 Cal.4th 425, 504.) However, this would not mean that an objection to the asserted *prosecutorial* misconduct was futile. Rather, it means that defendant's trial counsel could have had a rational tactical purpose for failing to object.

"An objection always will highlight the matter to which the objection is directed. Allowing this consequence to overcome the requirement of an objection would negate the rule that a party must object and request an admonition in order to preserve a claim of error and enable the trial court to correct the asserted error." (*People v. Foster* (2010) 50 Cal.4th 1301, 1352-1353.)

We therefore conclude that defendant's prosecutorial misconduct claim has been forfeited.

IV

THE SUFFICIENCY OF THE EVIDENCE OF A STRIKE

Defendant contends that there was insufficient evidence that his prior conviction constituted a strike.

A.    *Additional Factual and Procedural Background.*

According to exhibits that were admitted without objection, in July 1994, defendant was charged in Arizona with (among other things) one count of "intentionally or knowingly engag[ing] in sexual intercourse with . . . a child under the age of fourteen years," in violation of Arizona Revised Statutes sections 13-1401 and 13-1405.  The crime was allegedly committed in November 1992.

In November 1994, defendant pleaded guilty under this count to the lesser offense of "attempted sexual conduct with a minor under 14," in violation of Arizona Revised Statutes sections 13-1001, 13-1401, and 13-1405, a class 2 felony.  (Capitalization altered.)

The prosecution argued that this was the equivalent of a conviction in California for a lewd or lascivious act on a child under 14.  (Pen. Code, § 288, subd. (a).)  The trial court agreed and found the strike prior true.

B.    *Analysis*.

An out-of-state conviction is a strike if it is "for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7." (Pen. Code, §§ 667, subd. (d)(2), 1170.12, subd. (b)(2).)

An attempted lewd or lascivious act on a child under 14 (Pen. Code, § 288, subd. (a)) is a serious felony under Penal Code section 1192.7, subdivisions (c)(6) and (c)(39).

"[T]he court may look to the entire record of the conviction to determine the substance of the prior foreign conviction; but when the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law." (*People v. Guerrero* (1988) 44 Cal.3d 343, 354-355.)

The Arizona attempt statute, Arizona Revised Statutes section 13-1001, has not been amended since 1978. (Ariz. Laws 1978, ch. 201, § 122.) It is substantively identical to the California attempt statute (Pen. Code, § 664); defendant does not argue otherwise. Under it, an attempt to commit a felony is one class lower than the intended felony; in other words, an attempt to commit a class 1 felony is a class 2 felony, an attempt to commit a class 2 felony is a class 3 felony, and so on. (A.R.S. § 13-1001, subd. C.)

Arizona Revised Statutes section 13-1401 provides definitions to be used in conjunction with other statutes defining sexual offenses. Subdivision 3 of Arizona

14

Revised Statutes section 13-1401 defines "[s]exual intercourse" as "penetration into the penis, vulva or anus by any part of the body or by any object or masturbatory contact with the penis or vulva." This subdivision has not been amended in any material respect[10] since 1985. (Ariz. Laws 1985, ch. 364, § 16.)

Subdivision 1 of Arizona Revised Statutes section 13-1401 defines "oral sexual contact" as "oral contact with the penis, vulva or anus." This subdivision, too, has not been amended since 1985. (Ariz. Laws 1985, ch. 364, § 16.)

Defendant does not dispute that any act that would constitute sexual intercourse or oral sexual contact under Arizona Revised Statutes section 13-1401 would also constitute a lewd or lascivious act under Penal Code section 288.[11]

This brings us to the crime that defendant was convicted of attempting. Arizona Revised Statutes section 13-1405 defines the crime of sexual conduct with a minor. As of 1992, it provided:

"A. A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is *under eighteen years* of age.

---

**10** Prior to 1994, sexual intercourse included masturbation only if the masturbation was "manual." (Ariz. Laws 1985, ch. 364, § 16.) Effective January 1, 1994, the word "manual" was deleted. (Ariz. Laws 1993, ch. 255, § 23.)

**11** Thus, defendant does not contend that the Arizona and California statutes have different mens rea requirements.

"B. Sexual conduct with a minor under fourteen years of age is a class 2 felony

. . . . Sexual conduct with a minor fourteen years of age or over is a class 6 felony."

(Ariz. Laws 1990, ch. 384, § 2, emphasis added.)[12]

Defendant therefore argues that the record fails to show that the victim was under 14, as Penal Code section 288 would require. We disagree, for two reasons.

First, defendant expressly pleaded guilty to "attempted sexual conduct with a minor under 14." This admission was part of the record of conviction.

Second, defendant pleaded guilty to a class 3 felony. Sexual conduct with a minor under 14 was a class 2 felony (A.R.S. § 13-1405, subd. B); an attempt to commit a class 2 felony was a class 3 felony (A.R.S. § 13-1001, subdivision C.2). Thus, the record of conviction shows that defendant was convicted of attempted sexual conduct with a minor under 14.

V

*ROMERO* MOTION

Defendant contends that the trial court erred by denying his *Romero* motion.

A.    *Additional Factual and Procedural Background.*

At the time of sentencing, defendant was 42 years old and unemployed. His criminal history included:

---

[12]    Before January 1, 1990 (Ariz. Laws 1985, ch. 364, § 18), and after January 1, 1994 (Ariz. Laws 1993, ch. 255, § 25), the cutoff age between a class 2 and class 6 felony was 15.

16

November 1994:  Two felony convictions in Arizona, one essentially equivalent to an attempted lewd or lascivious act on a child under 14 (see part IV, *ante*),[13] and the other for sexual conduct with a minor 14 or older.  He was placed on probation.  In March 1999, he was found to be in violation of probation and was sentenced to seven years in prison.

June 2008:  Felony convictions for failure to register as a sex offender (Pen. Code, § 290, subd. (b)), failure to annually update sex offender registration (Pen. Code, § 290.012, subd. (a)), and failure to update sex offender registration after moving (Pen. Code, § 290.13, subd. (a)).  He was placed on probation, on conditions including the service of a 120-day jail term on weekends.  In June 2009 and again in February 2010, he was found to be in violation of probation; the second time, he was required to serve an additional 180-day jail term on weekends.

---

**13**     Defendant claims that "we know very little about the nature of the Arizona offense . . . .  We do not even know the exact nature of the act or acts involved."

Actually, in opposition to the *Romero* motion, the prosecution included a rather detailed account of the conduct underlying the conviction.  The prosecution, however, did not offer any *evidence* to support this account.

It is arguable that the trial court could consider the prosecution's account anyway. (See *People v. Wolozon* (1982) 138 Cal.App.3d 456, 460, fn. 4.)  If only out of an excess of caution, however, we will disregard it.

June 2009:  A misdemeanor conviction for child abuse.  (Pen. Code, § 273d, subd. (a).)[14]  He was placed on probation, on conditions including the service of a 30-day jail term on weekends.  Later in June 2009, he was found to be in violation of probation.

September 2009:  A felony conviction for threatening a witness.  (Pen. Code, § 140.)  He was placed on probation, on conditions including the service of a 127-day jail term.  In February 2010 and again in February 2012, he was found to be in violation of probation; the first time, he was required to serve an additional 180-day jail term on weekends.

December 2009:  A misdemeanor conviction for violation of a court order.  (Pen. Code, § 273.6, subd. (a).)  He was placed on probation.  In February 2012, he was found to be in violation of probation; he was required to serve 365 days in jail.

When defendant committed the current offenses, he was still on probation on the June 2009 and December 2009 convictions.

Before sentencing, defendant filed a *Romero* motion.  In it, he argued that his strike prior was remote.  He also argued that the current offenses were "[c]omparatively [p]etty."

The trial court denied the motion.  It noted defendant's "lack of success on probation, the commission of other offenses, . . . and being[,] . . . in the Court's mind, given an opportunity to succeed or fail.  You have thwarted all of those opportunities to

---

[14]    This was the conviction for beating Doe with a belt.

succeed . . . ." It added that "if [the strike] was an anomaly, in other words, if the offense itself that you had so long ago was isolated and there was no criminal history after that, I would feel differently . . . , but that's not the person that I have before me."

B.      *Analysis*.

In *Romero*, the Supreme Court held that a trial court has discretion to dismiss a three-strikes prior felony conviction allegation under Penal Code section 1385. (*People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 529-530.) The focus of the analysis must be on "'whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

"Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

"[A] trial court's refusal or failure to dismiss or strike a prior conviction allegation under section 1385 is subject to review for abuse of discretion." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 375.) "This standard is deferential. [Citations.] . . . [I]t asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts [citations]." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

There are no extraordinary circumstances in this case. Defendant is precisely the kind of garden-variety recidivist for whom the three strikes law was designed. His multiple convictions and his multiple failures on probation amply support the trial court's ruling. It is particularly telling that the current crimes were committed in violation of a protective order, which confirms that lesser measures have not been effective in inducing defendant to conform to the law.

Defendant argues that the strike prior was remote. Its remoteness, however, "is not significant" because defendant "did not refrain from criminal activity during that span of time, and he did not add maturity to age." (*People v. Williams*, *supra*, 17 Cal.4th at p. 163.)

Defendant also argues that the strike prior did not involve force or violence. The three strikes law, however, applies to serious *or* violent felonies. The legislature has chosen to designate an attempted lewd or lascivious act on a child under 14 as a serious felony. (Pen. Code, §§ 667, subd. (a)(4); 1192.7, subd. (c)(18).) We cannot say that

there were any particular facts or circumstances of defendant's strike prior that took it outside the spirit of the three strikes law.

Defendant also argues that Doe was not seriously injured. This overlooks the fact that defendant's 2009 child abuse conviction was also based on an incident in which he battered Doe. Regardless of whether Doe's injuries were serious — either time — evidently defendant could not refrain from violence when it came to his own son. Such recidivism supports the trial court's ruling. Next time, Doe might not be so lucky.

In any event, facts indicating that the current offenses were relatively nonserious, including the fact that Doe was not seriously injured, were matters that the trial court could consider in deciding whether to impose the low, middle, or upper term. (Cal. Rules of Court, rules 4.408(a), 4.421(a)(1), 4.423(a)(6).) Here, the trial court found that "this crime did involve great violence, and though it did not involve great bodily harm, it certainly had the threat of great bodily harm." Accordingly, it chose to impose the midterm. Having already taken the lack of serious injuries into account in deciding not to impose the aggravated term, and having rejected it as a mitigating factor, it could reasonably also reject it as a reason to strike the strike.

We therefore conclude that the trial court did not err by denying defendant's *Romero* motion.

## VI

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI

J.

We concur:

McKINSTER

Acting P. J.

MILLER

J.